IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| PHILIPP VITTI, | ) |
|         Plaintiff, | ) |
| | ) |
| v. | ) Case No. 16-cv-00236-FJG |
| | ) |
| STEVEN VOCKRODT, et al., | ) |
|         Defendants. | ) |

**ORDER**

Pending before the court is defendants' Motion to Dismiss (Doc. No. 7).

**I.	Background**

This lawsuit (which was removed to this Court on March 17, 2016) contains seven counts of defamation and two counts of negligence based on two articles published in The Pitch newspaper. Plaintiff Philipp Vitti (hereinafter "Vitti") alleges that the defendants Steven Vockrodt (hereinafter "Vockrodt"), Scott Wilson (hereinafter "Wilson"), KC Communications, LLC (hereinafter "KC Communications"), and SouthComm, Inc., published two defamatory articles in The Pitch (both in print and online) written by Vockrodt (a reporter for The Pitch).

The first article, "Lawsuit says the man who wanted to save Gusto Lounge took the money and ran" appeared in The Pitch on March 5, 2014 and is still available online. The second article, "On tap at Gusto Lounge: more lawsuits" appeared in The Pitch and online on March 12, 2014, and is still available online. The first article discusses a federal lawsuit (<u>504 Tavern LLC et al. v. Vitti et al.</u>, Case No. 14-cv-0114-FJG) which was filed against Vitti. The article indicates that the lawsuit suggests that Gusto (the bar ran by Vitti), was troubled. The article notes allegations that that Vitti stole money and went to Florida to try and open up a nightclub there with that money.

The second article notes that, besides the federal action, Vitti had also filed a lawsuit against the Saxtons (owners of Gusto) in state court. The article again asserts that the parties had alleged in their competing suits illegal activities such as drug use and theft.

After publication of these articles, the federal suit was stayed pending the state court action, and has since been dismissed. The parallel state court action proceeded to bench trial before Judge McKenzie in Division 13 of the Jackson County Circuit Court, and on December 7, 2015, Judge McKenzie issued a 34 page "Findings of Fact, Conclusions of Law, and Judgment" in favor of Vitti and against the Saxtons and their businesses, in the amount of $8,052,363.31. Plaintiff Vitti asserts that since the publication of the relevant articles, the Pitch and Vockrodt did not report on the state court's judgment, nor did they write any retraction of the original articles.

Vitti now alleges that because of the two articles published by The Pitch, he suffered and continues to suffer from a damaged reputation, is and continues to be exposed to hatred, contempt, ridicule, and continues to be deprived of public confidence and social association. Vitti claims his personal and professional reputation has been damaged and his earning ability is permanently impaired.

In defendants' motion to dismiss, they assert that plaintiff's defamation claims fail to plead one or more elements under Missouri law. They also argue that defendants' statements are privileged. Additionally, defendants assert that the negligence claims should be dismissed because plaintiff cannot establish that defendants owed him any duty, and are merely an attempt to circumvent the protections provided defendants in defamation claims.

**II.     Standard**

When evaluating a motion to dismiss, the court must accept plaintiff's factual allegations as true, construing them in the light most favorable to that plaintiff. Patterson Oil Co. v. VeriFone, Inc., No. 2:15-CV-4089, 2015 U.S. Dist. LEXIS 141635, at *9 (W.D. Mo. Oct. 19, 2015) (citing Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008)).

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in Twombly, 550 U.S. 544, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Id. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."

Ashcroft v. Iqbal, 556 U.S. 662, 677-678 (2009).

**III.    Discussion**

    **A.    Defamation**

Counts I through VII of the plaintiff's complaint assert claims for defamation. "Under Missouri law, a claim for defamation will survive a motion to dismiss if the communication alleged in the petition, together with matters of inducement and innuendo alleged in the petition, is capable of a defamatory meaning." Klein v. Victor, 903 F. Supp. 1327, 1329 (E.D. Mo. 1995). "Allegedly defamatory words must be read in connection with the whole publication, rather than in isolation." Id. at 1329. In order to state a defamation case in Missouri, the plaintiff must plead six elements: "(1)

3

publication, (2) of a defamatory statement, (3) that identifies the plaintiff, (4) that is false, (5) that is published with the requisite degree of fault, and (6) damages the plaintiff's reputation."[1] Nigro v. St. Joseph Med. Ctr., 371 S.W.3d 808, 811 (Mo. Ct. App. 2012) (quoted by Reinerio v. The Bank of N.Y. Mellon, 2015 U.S. Dist. LEXIS 173090 (W.D. Mo. Dec. 30, 2015)). Truth is an absolute defense to an alleged defamatory statement. Id. at 818.

> The test to be administered in evaluating the defense of truth is whether the challenged statement is substantially true. It is not necessary that the precise facts disclosed be literally true. Slight inaccuracies are immaterial if the allegedly defamatory charge is true in substance. A person is not bound to exact accuracy in his statements about another, if the statements are essentially true. A substantially true statement contains the same "sting" as the truth, which means that the plaintiff's damage would have been the same irrespective of whether the defendant stated the truth or the substantial truth.

Id. at 818.

A defamatory statement "tends so to harm the reputation of another as to lower him in the estimation of the community or to defer third persons from associating or dealing with him." Topper v. Midwest Div., Inc., 306 S.W.3d 117, 123 (Mo. Ct. App. 2010). "Whether a statement is capable of having a defamatory meaning is a question of law for the trial court. Words are to be taken in the sense which is most obvious and natural according to the ideas they are calculated to convey to those to whom they are addressed." Id. at 123. If someone is merely expressing an opinion, and the reasonable

---

[1] Because Missouri applies the fault standard for a private figure, in a case for actual damages only, the private figure need only prove "(1) defendant published the defamatory statement; (2) defendant was at fault in publishing the statement; (3) the statement tended to expose plaintiff to hatred, contempt and ridicule; (4) the statement was read by other persons or by the public; and (5) plaintiff's reputation was thereby damaged." Englezos v. Newspress & Gazette Co., 980 S.W.2d 25, 27 (Mo. Ct. App. 1998). However, as this is a case where the plaintiff seeks both actual and punitive damages as relief, the standard cited in the body of this order applies.

fact-finder can deduce that the person is giving their opinion that is generally protected by the Constitution and is not considered defamatory. Id. at 123. "Whether a statement is fact or opinion is a question of law, and an appellate court makes this determination based on the totality of the circumstances surrounding a given statement." Id.

Where plaintiff is seeking punitive damages, evidence of actual malice is required for recovery. Englezos v. Newspress & Gazette Co., 980 S.W.2d 25, 27 (Mo. Ct. App. 1998). Id. at 27. "In order to recover punitive damages, or overcome a qualified privilege, a private plaintiff was required to prove that the statements were made with knowledge that they were false or with reckless disregard for whether they were true or false at the time when defendant had serious doubts as to whether they were true." Id. at 27. This is a subjective test because "the test not being whether a reasonably prudent person would have had serious doubts as to the truth of the publication, but whether the defendant in fact entertained such doubts." Id. at 27. Many plaintiffs choose to prove that there was reckless disregard as to the statements being false because actual knowledge is hard to prove. Id. at 27. Failure to investigate does not in itself mean that there was bad faith by the defendant. Id. at 27.

> [T]he mere fact the reporter has failed to speak to the person the publication concerns before publishing the story does not support an award of punitive damages. It is only where there is, in addition, other evidence indicating actual malice that facts such as failure to investigate, or reliance on a questionable source are relevant to that determination; they may tend to show that a publisher did not care whether an article was truthful or not, or perhaps that the publisher did not want to discover facts which would have contradicted his source.

Englezos v. Newspress & Gazette Co., 980 S.W.2d 25, 27 (Mo. Ct. App. 1998).

The media has a qualified privilege to report on the filing of a petition even "prior to any judicial action being taken thereon." Hoeflicker v. Higginsville Advance, Inc., 818

5

S.W.2d 650, 650 (Mo. Ct. App. 1991). However, for that privilege to exist, the article must be accurate. Id. "It is not necessary that it be exact in every immaterial detail or that it conforms to that precision demanded in technical or scientific reporting. It is enough that it conveys to the persons who read it a substantially correct account of the proceedings." Id. at 650.

### 1. Count I (Libel)

Count I of Vitti's complaint alleges that the article published on March 5, 2014 contained the following false statements[2]:

i. Plaintiff's petition alleges that the article stated that Gusto had "troubles." (In particular, the article states "Gusto Lounge's troubles started not long after Don and David Saxton bought a 75 percent stake in 504 Tavern LLC, the business entity for Gusto Lounge, from Shawn Nelson in October 2011." Further, the article states "The place continues to operate on Westport Road, but a lawsuit filed in February indicates that it has been a troubled business since its 2011 opening.")

ii. "Six weeks after Vitti took Gusto Lounge's reins, the bar was behind on its utility bills, insurance premiums, payroll taxes and an assortment of other business expenses. Those details didn't prevent 504 Tavern's partners from keeping Vitti on the job. The partnership met with Vitti for three hours in December 2011 and told him to get his act together. About two months later, Vitti disappeared altogether without telling any of Gusto's owners."

iii. "The partners, according to the lawsuit, said they figured out that Vitti was gone when they started getting calls from employees, asking how to run the business."

---

[2] In a defamation lawsuit, "[t]he great weight of authority supports the view that the words used must be reproduced verbatim. It is also said that in libel the defamatory words must be set forth in *haec verba*….The complaint should set out, and purport to set out, the very words published." Lorenz v. Towntalk Pub. Co., 261 S.W.2d 952, 953 (Mo. 1953). Defendants complain that plaintiff in his petition has not quoted the article's words verbatim. In the above recitation of the alleged defamatory statements, the Court has used the words directly from the article.

6

iv. "Vitti, according to the lawsuit, withdrew "several thousands of dollars" within 24 hours after he got canned."

v. "By that time [after Vitti was fired], Missouri Gas Energy had shut off service to the bar, Kansas City Power & Light was within a day of cutting the electricity, and sales taxes hadn't been paid."

vi. "Gusto's owners figured out that Vitti had teamed up with Sippio to open a nightclub called Liquid, in Orlando, Florida. To do that, the lawsuit charges, the men had pilfered Gusto Lounge money to buy plane tickets to Florida and set up the new business," and

vii. "Tracking down Vitti is tricky matter. *The Pitch* could not locate him for comment, and lawyers have not yet been able to serve him with the lawsuit."

Plaintiff Vitti alleges that the statements were false and implied that he ran the business poorly, stole money, absconded to Florida, and was hard to contact. Vitti alleges that as a result, he suffered emotional distress, anxiety, his reputation is damaged, lost income, and his potential future earning suffered because of his reputation since the article was published.

Defendants allege that Count I of plaintiff's complaint fails to establish a claim for defamation and should be dismissed. Initially, defendants argue that because plaintiff failed to plead the words used verbatim, Count I should be dismissed. However, because the entire article has been cited by plaintiff and attached to the complaint, the Court finds this should not be the basis for dismissal.

With respect to the statements that Gusto was "troubled," (i, above), defendants argue that plaintiff cannot meet the third element of defamation, that the plaintiff was identified, as the statements were directed at the business, not at plaintiff. See May v. Greater Kansas City Dental, 863 S.W.2d 941, 945 (Mo. App. 1993). Further, defendants argue that plaintiff has not shown that the statements were false, as the

7

lawsuit indicated that the business was troubled. Defendants also argue that the statement is a protected expression of opinion, and falls within the fair comment doctrine and fair reportage privilege. In response plaintiff argues that he pled that "Gusto had a profit each month that Plaintiff was at Gusto," demonstrating sufficiently for Rule 12(b)(6) that he had pled falsity. Furthermore, given that the context of the article is that the lawsuit has alleged that Vitti was the cause of Gusto's troubles, plaintiff argues that the statements were directed at him and the business. The Court finds that plaintiff has sufficiently stated a claim in statement i.

With respect to statement ii above ("Six weeks after Vitti took Gusto Lounge's reins . . . ."), defendants argue that this paragraph is protected by the fair reportage privilege because it is clear for the context of the article that is simply reports on the allegations in the lawsuit, and all the statements are taken from the federal complaint against plaintiff (Ex. 2 to Doc. No. 8, ¶¶ 21-25). In response, plaintiff argues that it is not clear in the context of the article that the statements made by defendants came from the federal lawsuit's allegations. The Court finds that plaintiff has sufficiently pled the elements of defamation, and plaintiff has sufficiently stated a claim in statement ii.

With respect to statement iii above ("The partners, according to the lawsuit, said they figured out that Vitti was gone . . ."), defendants note that plaintiff omits in the petition the reference in the statement to the lawsuit. Defendants argue this is not defamatory as a matter of law, as the statement entirely reports on an allegation in a lawsuit; further it is privileged as a fair and accurate report of the allegations in the federal lawsuit, under the fair reportage privilege. In response, plaintiff argues that to be entitled to the privileges cited by defendants, defendants must attempt to speak with

8

plaintiff and verify the truth of the allegations, and plaintiff asserts defendants did not do either. At this stage, the Court finds the better course of action is to allow such claims to proceed, as such issues are better decided on summary judgment.

With respect to statement iv above ("Vitti, according to the lawsuit. . . ."), again plaintiff omits the "according to the lawsuit" language from his state court petition. Defendants argue this statement is protected by the fair reportage privilege. Plaintiff again argues that defendants have not demonstrated entitlement to any privileges. The Court finds this claim should be allowed to proceed at this stage of the lawsuit.

With respect to statement v above ("Missouri Gas Energy had shut off service to the bar . . . ."), defendants argue that (1) plaintiff has not demonstrated this statement is false; (2) plaintiff has not demonstrated that this statement identifies him, as opposed to Gusto Lounge; and (3) it is taken directly from the allegations in the federal lawsuit, and is therefore protected by the fair reportage privilege and fair comment doctrine. Plaintiff against argues that this statement directly impugns his abilities as a manager of a business (similar to statement I above), and is false. Again, the Court finds this type of claim would be better resolved on summary judgment.

With respect to statement vi above ("To do that, the lawsuit charges, . . . ."), defendants again note that plaintiff omits the "the lawsuit charges" language from the petition, and that this statement is protected by fair reportage privilege and fair comment doctrine. Again, plaintiff argues that defendants failed to attempt to verify the statements and are not entitled to any privileges. Again, the Court finds that plaintiff has sufficiently stated a claim in regards to statement vi.

9

Finally, with respect to statement vii above ("That tracking down Vitti is a tricky matter . . . ."), defendants argue that this statement is also the basis for Count II of the petition, and defendant incorporate by reference their arguments made in that section. For the reasons stated below in relation to Count II, the Court denies the motion to dismiss based on statement vii in Count I.

### 2. Count II (Libel)

Defendants allege that Count II fails to establish defamation as a matter of law. Count II of the complaint states "Tracking down Vitti is tricky matter. *The Pitch* could not locate him for comment, and lawyers have not yet been able to serve him with the lawsuit." The statement also incorporates the background allegations, and statement of prayer for damages. Defendants argue that stating that locating an individual for comment as a newspaper reporter has been 'tricky" is not defamatory.

However, as noted by plaintiff, the statement could be seen as defamatory when looked at in the light most favorable to the plaintiff with the background allegations and entire article taken into account. This is because: (1) Vitti is identified by name; (2) if no one attempted to reach him, the statement could be false; (3) considering the title of the article ("Lawsuit says that the man who wanted to save Gusto Lounge took money and ran"), there is an implication that this is the reason tracking him down is "tricky."

The Court finds all the necessary elements of defamation were pled. The fair reportage privilege would not protect Vockrodt if the report is not accurate or complete since it does not report the whole story about the different law suits occurring or make sure the reader knows these are allegations; such issues, moreover, would be better

10

raised on summary judgment where a full record could be made. The motion to dismiss is denied as to Count II.

### 3. Count III (Libel)

The defendant asserts that Count III of the plaintiff's complaint should be dismissed for failure to state a claim. The statement at issue in this count is "Gusto Lounge's *troubles* started not long after Don and David Saxton bought a 75 percent stake in 504 Tavern LLC, the business entity for Gusto Lounge, from Shawn Nelson in October 2011" and "[t]he place continues to operate on Westport Road, but a lawsuit filed in February indicates that it has been a *troubled* business since its 2011 opening" (emphasis added). Defendants argue that plaintiff has failed to plead the elements (such as falsity, identification of plaintiff, damages, or fault). Defendants also argue that privileges apply. The Court, however, finds that these statements could be seen as defamatory in context, as it reasonably could be inferred that the person running the business was not doing his job well (and plaintiff alleges that, instead, the business had a profit when he was in charge). Additionally, the Court finds that the privileges raised by defendants would be better considered on summary judgment. Defendants' motion to dismiss is **DENIED** as to Count III.

### 4. Count IV (Libel):

Count IV alleges that the statements made in the paragraphs below were false and they damaged Vitti's reputation. The defendants allege that count IV should be dismissed for failure to state a claim. This count deals with the portion of the article stating:

11

> The 504 Tavern partnership struck a management agreement with Acosta to run the business operations in return for a cut of the profits. It soon became apparent, however, that Vitti was the only one doing any work. So in early November 2011, when Gusto Lounge prepared to make its opening splash in Westport, Vitti himself became the business manager, running the bar and paying its bills.
>
> Those duties gave Vitti access to a debit card tied to 504 Tavern's bank account.
>
> Six weeks after Vitti took Gusto Lounge's reins, the bar was behind on its utility bills, insurance premiums, payroll taxes and an assortment of other business expenses. Those details didn't prevent 504 Tavern's partners from keeping Vitti on the job. The partnership met with Vitti for three hours in December 2011 and told him to get his act together. About two months later, Vitti disappeared altogether without telling any of Gusto's owners.

Defendants argue that the first paragraph is not defamatory as a matter of law because it generally praises plaintiff; however, plaintiff argues that when read together, the three paragraphs impugn plaintiff's abilities. Similarly, defendant argues that the second, one-sentence paragraph is not defamatory; however, plaintiff argues that this sentence, when read together with the third, implies that plaintiff ran off with the business's debit card. Finally, defendants argue that with respect to the third paragraph, plaintiff has pled nothing more than conclusory allegations that this statement is false. The Court finds, however, that these three paragraphs may be seen as defamatory when read in connection with the article as a whole, however, because they call into Vitti's ability to run a business since they imply he was not paying bills and disappeared, and could cause third parties to think Vitti is not a good manager. Vitti is specifically identified. The Court further finds that plaintiff has sufficiently pled the elements of the claim, and that the statement may not be covered by the fair reportage privilege if the statements were not reported fairly and accurately (again, such issues

12

would be better raised on summary judgment). Therefore, the motion to dismiss is **DENIED** as to Count IV.

     5.    **Count V**

Count V alleges that the second article in *The Pitch*, "On tap at Gusto Lounge: more lawsuits," published on March 12, 2014, had false statements as well. The article quoted Saxton stating that "Mr. Vitti was fired because he stole from the bar and forged signatures of the owners." Defendants argue Count V should be dismissed for failure to state a claim, because the statements are privileged under the fair reporter privilege. The Court, however, finds that plaintiff has sufficiently pled the elements of the claim. Additionally, plaintiff argues in response that defendants did not do their due diligence to determine whether Saxton's statements were true, and therefore the statements should not be found to be privileged. Again, this is a claim that would be better decided on summary judgment, where defendants could make a record regarding privilege. Defendants' motion to dismiss Count V is **DENIED.**

     6.    **Count VI (Libel)**

Defendants allege that Count VI should be dismissed for failure to state a claim. This count focuses on a statement made in the March 12 article stating "But installing a crepe shop in a seedy bar and converting its upstairs into a *probably illegal after-hours* speakeasy didn't turn out to be a winning business plan" (emphasis added). Defendants argue that plaintiff fails to show how this statement regarding a prior failed business location of Gusto Lounge damaged his reputation or was false. Additionally, defendants argue that the use of the word "probably" converts this to an expression of opinion, which is protected language. However, when looking at the article as a whole,

13

the Court finds that this statement, in context, could be seen as defamatory, and the necessary elements have been pled. At this stage of the litigation, the Court cannot find that the use of the word "probably" makes this a statement of opinion, based on nothing but defendant's one sentence argument. The motion to dismiss Count VI is **DENIED.**

### 7. Count VII (Libel)

Defendants allege that Count VII should be dismissed because it fails to establish defamation as a matter of law. Count VII focuses on the March 12 article and its allegedly misleading assertion that "[t]hen the story gets weird." The article cites Vitti's lawsuit, wherein Vitti claims that Saxton elbowed his way into Gusto's business dealings, demanding higher rent and a larger share of sales for himself. Vitti also claims that Acosta and Saxton started doing cocaine in Gusto's business office and drinking after hours, jeopardizing the bar's liquor license.

Defendants claim that "weird" is not defamatory language, and plaintiff has not shown that it is false or how it damaged his reputation. Further, defendants argue that this statement is not directed at plaintiff, but refers generally to the lawsuits filed. Plaintiff, however, indicates that, in context, "weird" refers to the allegations made in Vitti's state law petition. Plaintiff asserts that his petition's allegations were referred to as "weird," while the allegations made by the Saxtons were reported verbatim in the articles, giving the impression that Vitti's allegations were not true. Again, at this stage of the litigation, such claims should be allowed to proceed. Defendants' motion to dismiss Count VII is **DENIED.**

### B. Negligence

14

In order to state a claim for negligence in the state of Missouri, a plaintiff must plead "a (1) legal duty on the part of the defendant to conform to a certain standard of conduct to protect others against unreasonable risks; (2) a breach of that duty; (3) a proximate cause between the conduct and the resulting injury; and (4) actual damages to the claimant's person or property." Howard v. Frost Nat'l Bank, 458 S.W.3d 849, 853 (Mo. Ct. App. 2015) (quoting Hoover's Dairy, Inc. v. Mid-Am. Dairymen, Inc./Special Products, Inc., 700 S.W.2d 426, 431 (Mo. banc 1985)). Negligence is based on the facts and the surrounding circumstances. "Where reasonable minds could infer negligence, determinations of breach of duty are questions of fact for the finder of fact, not questions of law for this court." Luallen v. Reid, 58 S.W.3d 50, 53 (Mo. Ct. App. 2001) (quoting G.E.T. ex rel. T.T. v. Barron, 4 S.W.3d 622, 625 (Mo. App. E.D. 1999)). The court determines if a duty exists because that is a question of law. Leeper v. Asmus, 440 S.W.3d 478, 482 (Mo. Ct. App. 2014).

In Nazeri v. Missouri Valley College, 860 S.W.2d 303 (Mo.1993) (en banc), the Missouri Supreme Court stated "[r]ecovery for untrue statements should be in defamation." Id. at 315 (citing Barber v. Time, Inc., 159 S.W.2d 291, 296 (Mo.1942)). "Care should be exercised when weeding out improperly pleaded alternative counts of prima facie tort…However, when it is clear that the theory is being asserted merely to circumvent an established body of law, or when it is not supported by the pleading of the factual elements giving rise to the claim, the prima facie count may be dismissed earlier." Nazeri, 860 S.W.2d at 306.

Counts VIII and IX of the petition allege negligence. Both of the counts allege failure of the duty to properly investigate the surrounding facts for both the March 5,

15

2014 (Count VIII) and March 12, 2014 (Count IX) newspaper articles. Both counts, however, are duplicative of the defamation counts pled in the complaint. Therefore, a defamation claim suffices as stated in Nazeri, and plaintiff's alternatively pled negligence claims must be dismissed. Accordingly, the motion to dismiss is **GRANTED** as to Counts VIII and IX of the petition.

## IV. Conclusion

Therefore, for the foregoing reasons, defendants' motion to dismiss (Doc. No. 7) is **GRANTED IN PART** as to Counts VIII and IX, and **DENIED IN PART** as to all remaining counts of the petition.

**IT IS SO ORDERED.**

/s/Fernando J. Gaitan, Jr.
Fernando J. Gaitan, Jr.
United States District Judge

Dated: August 24, 2016